UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22352-Civ-MIDDLEBROOKS
        (07-20588-Cr-MIDDLEBROOKS)[1]
MAGISTRATE JUDGE P.A. WHITE

GREGORY STARKS,                   :

        Movant,                   :

v.                                :          REPORT OF
                                         MAGISTRATE JUDGE
UNITED STATES OF AMERICA,  :

        Respondent.               :
_____ :

### I    INTRODUCTION

This matter is before this Court upon Movant Starks' *pro se* motion to vacate pursuant to 28 U.S.C. §2255, as supplemented, attacking his convictions and sentences in Case No. 07-20588-Cr-MIDDLEBROOKS. Starks was charged in 5 counts of a 7-Count grand jury Indictment [Counts 1, 2, 4, 6 and 7]. He entered into a negotiated written plea agreement under which Counts 2, 4, and 6 were dismissed, and he agreed to plead guilty on Counts 1 and 7 to: [Count 1] conspiring between 2/2/2006 and 10/5/2006 to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846, based on responsibility for more than 15 kilos but less than 50 kilos of cocaine, where the indictment charged that the violation involved 5 kilograms or more of a mixture or substance containing a detectable amount of the drug; and [Count 7] possession with intent to distribute heroin on 5/9/2007, in violation of 21 U.S.C. §841, based on responsibility for more than 20 grams but less than 40 grams of heroin, where the indictment charged that the violation involved a mixture or substance of unspecified weight containing a detectable amount of the drug. On 9/20/2007 Starks' change of plea was entered under the agreement, and on 12/13/2007 on Counts 1 and 7, respectively, he was sentenced to concurrent 188 month terms of imprisonment, and 5 and 3 years supervised release.

---

[1]      On 8/16/2007, the criminal case, No. 07-20588-Cr-DIMITROULEAS, was transferred to the calendar of the Honorable Donald M. Middlebrooks, United States District Judge. (Cr:DE35).

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

For its consideration the Court has the §2255 motion, as supplemented (Cv:DEs 1, 6, 13); the government's Response (Cv:DE10) with Exhibits A-F (Cv:DEs 10-1 to 10-6); Movant's "Traverse" (Cv:DE11), in opposition to the government's response; Movant's Presentence Investigation Report, as amended ("PSIR"), and the record in Movant Starks' underlying criminal case. Relevant portions of the record from Movant's federal criminal case appear in the Respondent's [Government's] exhibits. These include: the Plea Agreement (Ex.A), a transcript of Movant's 9/20/2007 Change of Plea conducted before the Honorable Stephen T. Brown, United States Magistrate Judge (Ex.B); Judge Brown's 9/21/2007 Report and Recommendation of Change of Plea (Ex.C); Movant's 11/21/2007 Objections to the PSIR, filed through attorney Barry T. Shevlin, Esquire (Ex.D); and a transcript of Movant's 12/13/2007 Sentencing before the Honorable Donald M. Middlebrooks, United States District Judge (Ex.E). The Court also has for its consideration government Exhibit F, consisting of: correspondence dated 12/18/2007 from Attorney Shevlin confirming that, as was discussed with Movant at sentencing, the sentence was not being appealed, and the firm would not be representing Movant further in the matter (Ex.F, Cv:10-6 at p.2); and two letters dated 3/25/2009 and 4/23/2009 from Movant to Attorney Shevlin, seeking assistance related issues for a §2255 motion.

Underlying facts involved in the unlawful activities of the movant (Offense Conduct), and his role in those activities (Role Assessment), are detailed in the PSIR (at pp.5-9, ¶¶12-30).

2

**The Movant's Asserted Grounds for Relief**
**As Stated in the Initial §2255 Motion (Cv:DE1), and**
**As Stated in the Supplements Thereto (Cv:DEs 6 and 13)**

**Cv:DE1**      **GROUND ONE:**

> **Counsel was ineffective, as counsel failed to address factors cocaine amounts found in Special Agent Christopher Davis' Affidavit, which indicates Petitioner was responsible for only two kilograms of cocaine.**

> **Counsel was ineffective for failing to perfect an appeal.**

**Note:** *In support of this claim, Movant Starks (at Cv:DE1, ¶12 Ground One) references an Affidavit by Agent Davis, dated 6/30/2007 and incorporated in the Criminal Complaint Cr:DE1, docketed 7/2/2007, at the outset of the criminal case. The 6/30/2007 Affidavit references a 6/29/2007 controlled delivery sting operation involving a bag containing 10 Kg, and a statement to the undercover CI by Movant Gregory Starks' brother, Timothy, indicating 2 Kg was going to Gregory Starks.*

**Note:** *Movant Gregory Starks (at Cv:DE1, ¶18), further contends that evidence later came to light in January 2009 in his Co-defendant James Park's trial, allegedly confirming [according to Gregory Starks] that there was only 10 Kg of cocaine involved in the 6/29/2007 transaction in question, and since his §2255 motion was filed within 1 year of Parks' 2009 trial, his [Starks'] §2255 Motion to vacate should be deemed timely.*

**Cv:DE6**      **GROUND ONE:**

> **Counsel's Performance Was Deficient When Failing to Object to and Raise on Appeal, the Career Offender Classification.**

**Note:** *In this Ground, Movant Starks argues that prior state drug offense convictions referenced in the PSIR [at ¶¶58 and 61] to support the finding that he was/is a Career Offender under USSG §4B1.1, were not proper predicate offenses, as defined under USSG §4B1.2(b).*

**Cv:DE6**      **GROUND TWO:**

3

**Petitioner suffered ineffective assistance of counsel as he was actually innocent of the Sentencing Enhancement as a Career Offender as determined by the Supreme Court in Begay v. United States, 128 S.Ct. 1581 (2008) and United States v. Archer, 531 F.3d 1347 (11th Cir. 2008).**

*In this ground, Movant Starks argues that since the probation officer's recommendation in the PSIR that he be designated as a Career Offender was based in part on a prior 1996 conviction for "Carrying a Concealed Weapon" [see PSIR ¶53], his sentence as a Career Offender under §4B1.1 must be overturned, pursuant to Begay and Archer.*

**Cv:DE6**    **GROUND THREE:**

**Petitioner now suffers from a manifest injustice which in the instant case, warrants relief.**

*In this ground, Movant Starks argues that "the continued imposition of a Career Offender sentence in the case at hand" constitutes a manifest injustice, warranting relief.*

**Cv:DE13**    **The Movant Counsel was Ineffective at Sentencing**

*Here, Movant [reiterating prior argument about a 10 Kg transaction from which 2 Kg allegedly was to go to Movant] argues that counsel failed to challenge the amount of drugs attributed to him;* and failed to make arguments about aggregation of amounts involved in separate transactions. Movant also argues that apart from his state concealed weapon conviction relied upon in the PSIR, he has only one prior state drug conviction which would qualify him as a Career Offender under *USSG §4B1.1.*

**Ineffective Assistance, and**

4

## **the Standard of Strickland v. Washington**

Insofar as Movant Starks' motion, as supplemented, includes claims that he received ineffective assistance of counsel, his claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to the movant. See Massaro v. United States, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a movant must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001); Strickland, supra. Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" Id. at 1314 (quoting Strickland v. Washington, 466 U.S. at 689-90.

Counsel has no duty to raise defenses which have little or no chance of success. Knowles v. Mirzayance, ___ U.S.___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009)(the law does not require counsel to raise every available non-frivolous defense). See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990) (holding that appellate counsel is not required to raise meritless issues); Matire v. Wainwright, 811 F.2d 1430 (11 Cir. 1987) (same).

When assessing a lawyer's performance, "[C]ourts must indulge

the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

The Eleventh Circuit will not "second-guess counsel's strategy." Chandler, 218 F.3d at 1314, n.14. Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." Chandler, 218 F.3d at 1318 (quoting Strickland, 466 U.S. at 690-91).

The courts "are not interested in grading lawyers' perform-ances;" but rather, "are interested in whether the adversarial process at trial...worked adequately." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)(quotation marks omitted). To be unreasonable,

the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d at 386.

Under the second prong of the test set forth in <u>Strickland</u>, the movant can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

Bare, conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to re-quire a hearing or further consideration. <u>United States v. Robinson</u>, 64 F.3d 403, 405 (8 Cir.1995), <u>Ferguson v. United States</u>, 699 F.2d 1071 (11 Cir. 1983), <u>United States v. Ammirato</u>, 670 F.2d 552 (5 Cir.1982); <u>United States v. Sanderson</u>, 595 F.2d 1021 (5 Cir.1979).

### <u>The Movant's Plea and Sentencing in His Federal Case And Procedural Background Underlying this §2255 Proceeding</u>

After entering into his 9/20/2007 negotiated written plea agreement (Ex.A), the movant on 9/20/2007 plead guilty on Counts 1 and 7, and on 12/13/2007 was sentenced, as previously discussed. The written  negotiated plea agreement, signed by the Movant, incorporated a waiver of appellate rights (Ex.A ¶14) with regard to sentencing issues.

The waiver of the right to appeal in the Agreement stated that movant was aware that 18 U.S.C. §3742 affords the defendant a right to appeal the sentence imposed, but that in exchange for the undertakings made by the United States in the plea agreement, the movant agreed to waive all rights conferred under §3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the statutory maximum or is the result of an upward departure from the guidelines range that the Court establishes at sentencing. By signing the agreement the movant further stated his understanding that it did not affect the government's right or duty to appeal, and that if the government did so the movant would be released from his waiver. The movant by signing the waiver further acknowledged that he had discussed the appeal waiver set forth in the agreement with his attorney, and further agreed, together with the United States, to request that the district court enter specific findings that movant's waiver of his right to appeal the sentence to be imposed in the case was knowing and voluntary. (Ex.A, ¶14).

Under the Agreement, the movant also acknowledged his understanding that as to Count 1 the Court was required to impose a statutory minimum term of 10 years and could impose a statutory maximum term of life imprisonment; and that on Count 7 the court could impose a statutory maximum of 20 years imprisonment. (Ex.A, ¶4). Under the agreement, as to the quantities of narcotics, the Government agreed, although it was not binding on the probation office or the Court, to recommend the aforementioned amounts for which the movant ultimately was sentenced [i.e., more than 15 but less than 50 Kilos of cocaine, on Count 1; and more than 20 but less than 40 grams of heroin, on Count 7]. (Ex.A at ¶7). The Plea Agreement also cautioned the movant that the sentence in the case had not yet been determined, and that any estimate of the probable sentencing range or sentence, whether from defendant's attorney,

the government, or the probation office, was a prediction, not a promise, and was not binding on the government, the probation office, or the Court; and further cautioned the defendant, and stated/confirmed defendant's understanding, that any government recommendation regarding sentencing, whether pursuant to the agreement or otherwise, was not binding on the Court and could be disregarded by the Court in its entirety. (Ex.A, ¶13).

At his plea colloquy, Movant acknowledged his satisfaction with counsel's representation and advice, that he had read and understood the plea agreement and the consequences and promises made by the parties in it. He acknowledged that he was not forced to enter into the plea agreement, that no other promises were made to him apart from those in the agreement. (Ex.B, T/3-25). He acknowledged that he had gone over the indictment with his attorney, and had fully discussed the charges with him. (Id. T/8). He acknowledged that it would be recommended that he be held responsible for the amounts referenced in the plea agreement (Id., T/15). He acknowledged his understanding that the Court could impose a term of imprisonment between 10 years and life based on a statutory minimum of 10 years on Count 1, and statutory maxima of life and of 20 years, respectively, on Counts 1 and 7; and that the court could impose a sentence either within, below, or above the calculated sentencing guidelines range, and although the government had conveyed that it would recommend the low end of the guidelines at sentencing, any such recommendation was not binding on the court. (Id. T/10-11, 13-15). Movant also acknowledged his understanding that by pleading pursuant to the negotiated written plea agreement he was waiving most of his appellate rights under 18 U.S.C. §3742, including specifically his right to appeal a sentence imposed by the judge, including any restitution order, unless the sentence imposed were to exceed the maxima permitted by statute, or were the result of an upward departure from the guideline range that was yet to be established (Id., T/18). Prior to the Movant's declaration

9

that he was pleading guilty to Counts 1 and 7 (at T/23) the government made a factual proffer of evidence against him, stating in pertinent part that: between about February 2 and October 5 of 2006, there was cocaine conspiracy in this District of which Movant was a part, which conspiracy involved at least 15 kilos of cocaine; and that, in addition, on or about May 9, 2007, the Movant had sold an undercover DEA agent approximately one ounce of Heroin. (T/21-22). Before entering his plea, the movant was asked if he heard and agreed with the facts proffered by the government, and he stated under oath that he did. He reaffirmed that noone had attempted in any way to force him to plead guilty, and that he was doing so freely and voluntarily, and that he was accepting the consequences of doing so (T/21-22).

The PSIR was prepared, assigning a base offense level of 36 pursuant to USSG §§2D1.1(a)(3) and (c)(3) where the offenses involved at least 50 kg of cocaine in the cocaine conspiracy, and 27.8 grams of heroin [weighed after the sale to the DEA agent].[2]

The base offense level of 36, predicated on drug quantities,

---

[2]      For calculation of the Offense Level Computation, Counts 1 and 7 were grouped together because the offense level is determined largely on the basis of controlled substances involved. (See USSG §3D1.2(d), and PSIR ¶35).

For purposes of Offense Level calculation, the difference between use of precisely 50 Kg of cocaine in the PSI (referencing "at least 50 kg of cocaine), as opposed to a fraction of a kilo less of cocaine (e.g. 49.999 kg) which would correspond with the "at least 15 but less than 50 kg" of cocaine referenced in the plea agreement and change of plea hearing, is of no consequence in regard to calculation of a Base Offense Level of 36 predicated on the quantity of drugs involved in the counts against the Movant Starks (counts 1 and 7).

It is apparent, using equivalency charts provided in the 2007 USSG manual at Chapter 2, Part D, that based on over 15 but less than 50 Kg of cocaine, the Marijuana equivalent of 49.999 kg of cocaine (or 49,999 grams of cocaine -- using 200 grams of marijuana per gram of cocaine) would be 9,999.8 kg of marijuana. The Marijuana equivalent of 27.8 grams of heroin (using 1 kg of marijuana per gram of heroin) would be 27.8 kg of marijuana. The two equivalent amounts (9,999.8 kg marijuana corresponding to the cocaine, and the 27.8 kg of marijuana corresponding to the heroin) total 10,027.6 kg of marijuana, and under the 2007 Drug Quantity Table (c) corresponding to USSG §2D1.1(a)(3), the Base Offense Level which corresponds to between 10,000 and 30,000 kg of marijuana is 36.

however, was trumped by the fact that the Movant, based on his prior criminal record, was deemed a Career Offender under USSG §4B1.1(a). Since the statutory maximum sentence he faced for a predicate offense in Case 07-20588-Cr-MIDDLEBROOKS was a possible life sentence for Count 1, then under USSG §4B1.1(b)(A) his enhanced Offense Level was 37 [rather than a Base Offense Level of 36 under §§2D.1(a)(3) and (c)(3), derived from adding together the quantities of cocaine and heroin attributed to and later plead to by him]. The Movant Gregory Starks' qualification for the Career Offender status is shown by the following. USSG §4B1.1(a) provides that a defendant is a career offender if he was at least 18 years of act at the time of the instant offense of conviction, the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and the defendant had least two prior felony convictions of either a crime of violence <u>or a controlled substance offense</u>. In this case, the Movant Starks was over 18 when the offenses in Counts 1 and 7 [both controlled substance offenses] were committed, and as reflected in the PSI he had convictions for no less than two prior adult "controlled substance" felony offenses convictions [as defined under USSG §4B1.2(b) and (c)] which qualify under USSG §§4B1.1(a) for career offender status. <u>See</u> <u>*Miami-Dade Felony Case F03013421*</u> (referenced at ¶58 of the PSIR) that included 8/6/2003 convictions on Count 1: Possession With Intent to Sell or Deliver Marijuana, and Count 4, Possession With Intent to Sell, Manufacture or Deliver Cocaine; and <u>*Miami-Dade Felony Case F05028838A*</u> (referenced at ¶61 of the PSIR) that included a 9/30/05 conviction on Count 1 for Possession With Intent to Sell, Manufacture or Deliver Cannabis.

[*It is here noted that ¶¶42 and 53 of the 2007 PSIR for Movant's Case 07-20588-Cr-MIDDLEBROOKS also referenced <u>Miami-Dade Felony Case No. F96030923</u> involving a 11/13/1996 conviction for Carrying a Concealed Weapon [Ct.1] as a basis for assigning him career offender status. That conviction, however, is and was unnecessary*

*to a finding that Starks qualified as a Career Offender. Based
alone on his prior drug offenses in Cases <u>F03013421</u> and <u>F05028838A</u>
(referenced in ¶¶58 and 61 of the PSIR), he was a Career Offender
for whom the proper enhanced Offense Level was 37, with or without
the Concealed Firearm conviction in Case F96030923. The assignment
of Offense Level 37 was pursuant to §4B1.1(b)(A), because on Count
1 of the federal Indictment in Case 07-20588-Cr-MIDDLEBROOKS, the
Movant faced a possible maximum statutory sentence of Life].*

Based on government recommendation, the Movant also received
a 3-level downward adjustment from 37 to 34, under §3E1.1 for
acceptance of responsibility and assisting the government in its
investigation of his misconduct by timely notifying authorities of
his intention to plead guilty.

Pursuant to §4B1.1(b), a Career Offender's criminal history
category <u>in every case</u> under the subsection is Category VI. Based
on a Total Offense Level of 34, and a Criminal History Category of
VI, the advisory sentencing guideline on the 2007 Sentencing Table
[USSG Chapter Five -Part A] was 262-327 months.

After argument by defense counsel at Movant's sentencing hear-
ing, seeking the best sentence possible for his client under the
circumstances, Movant Starks was sentenced to the aforementioned
concurrent 188 month terms of imprisonment on 12/13/2007. This was
some 74 months [or approximately 6 years] less than the term which
might have been imposed if the court had sentenced at the bottom of
the advisory guideline calculation, and some 139 months [or
approximately 11.5 years] less than the term which might have been
imposed if the court had sentenced at the top of the guidelines.

In light of the appeal waiver that was part of Movant's nego-
tiated plea agreement, no direct appeal was taken, as reflected in
Counsel's 12/18/2007 letter to the Movant (Cv:DE10-6). The Movant's

12

Judgment and Commitment (Cr:69) was docketed in the criminal case on 12/20/2007. Under the circumstances, the Movant's conviction became final ten days later, on January 3, 2008, when the 10 day period for filing a notice of appeal expired. Fed.R.App.P. 4(b)(1)(a); Clay v. United States, 537 U.S. 522 (2003).

Movant commenced these §2255 proceedings in 2009. The initial §2255 Motion (Cv:1) was dated, submitted for mailing, and therefore filed, on August 3, 2009, a year and 7 months after his conviction was final. The supplemental §2255 motion (Cv:6) was dated, submitted for mailing, and therefore filed, 26 days later, on August 29, 2009.

## II   DISCUSSION/ANALYSIS OF MOVANT'S CLAIMS

### (Cv:DE1)   GROUND ONE:

In ground One of his initial §2255 motion (Motion Cv:DE1, ¶12 Ground One; and Supporting Memo, Cv:DE1, p.19), Movant Starks asserts that his defense attorney, Mr. Shevlin, was ineffective for not arguing that an affidavit by Agent Christopher Davis indicated that he (Gregory Starks) was personally responsible for only 2 kg of cocaine.

On the standard pre-printed form provided for federal prisoners to seek §2255 relief, Movant Starks, after setting out the factual basis for his claim [§2255 form, ¶12, GROUND ONE, ¶(a) Supporting facts], then proceeded to answer questions regarding whether he appealed his judgment of conviction, and if so, whether he included therein the claim from Ground One as an issue [§2255 form, ¶12, Ground One, ¶(b)]. In response to the first question [at ¶(b)(1)], Movant put an "X" in the box next to the word "No," indicating he took no appeal. Then [at ¶(b)(2)] when answering the form's pre-printed instruction ("If you did not raise this issue in your direct appeal, explain why:"), the Movant wrote "Counsel was ineffective for failing to perfect an appeal."

13

As noted, the Movant, in support of ground one (Cv:DE1, ¶12 Ground One), references an Affidavit by Agent Davis which is dated 6/30/2007, and was incorporated in the Criminal Complaint Cr:DE1, docketed on 7/2/2007 at the very outset of the criminal case. The 6/3/02007 Affidavit cited, in pertinent part, a 6/29/2007 controlled delivery/sting operation and, stated that it involved delivery of a bag containing 10 Kg, of which Movant Gregory Starks was to receive 2 Kg. It also referenced Movant's earlier involvement in transactions in 2006.[3] Subsequent to the filing of the Criminal Complaint (Cr:DE1) which had named only the brothers Timothy and Gregory Starks, a grand jury one month later returned the aforementioned 7-Count Indictment as a true bill (Cr:DE20, 7/27/2007) against 5 defendants (Timothy and Gregory Starks; Tyrone Maycock, James Park, and Fnu Lnu), which included multiple conspiracy counts, and counts charging possession or attempted possession with intent to distribute.

Movant Starks, apparently attempting to avoid application of a procedural time bar to his claim(s), also alleges (Motion, Cv:DE1, ¶18) that evidence was offered in January 2009 in his Co-defendant James Park's trial, showing that there was only 10 Kg of cocaine involved in the 6/29/2007 transaction in question. Evidence from Parks' criminal case, however, indicates that 15 kg actually

---

[3]    It is at ¶12 of his §2255 motion in this civil case (Cv:DE1) that Movant references Agent Davis' Affidavit from the underlying criminal case (Affidavit attached to Criminal Complaint Cr:DE1). In that Affidavit Agent Davis stated as follows.  A CI had informed him that between February and October 2006 he/she had sold over 100 Kg. of cocaine to Tim Starks and over 50 Kg of cocaine to Gregory Starks.[Affidavit, Cr:DE1, ¶1]. Subsequently the CI had controlled telephone conversations and meetings with Tim and Gregory Starks during which the Starks brothers both indicated they wanted to purchase Kilogram quantities of cocaine from the CI for eventual resale. Ultimately, plans for a delivery were made. [Id., ¶2]. On June 29, 2007, the CI had 10 Kg of look alike cocaine in a bag; Tim and Gregory Starks entered the CI's vehicle, they examined the contents of the bag. Tim indicated that he would take all 10 Kg, and that he would give Gregory two of the Kilograms when they were dropped off. An arrest signal was given by the CI, and Tim and Gregory Starks were taken into custody. [Id., ¶3].

was delivered during the 6/29/2007 transaction by the DEA agent.[4]

To the extent that Ground One of the motion Cv:DE1 may be con-strued to include a claim that counsel failed to file an appeal, and specifically one related to the asserted drug quantity issue, the Movant is entitled to no relief. He cannot establish deficient performance under Strickland v. Washington, 466 U.S. 668 (1984).

---

[4]     Movant Gregory Starks (in his first §2255 Motion (Cv:DE1, at ¶18 under the heading TIMELINESS OF MOTION) references evidence from co-defendant Park's portion of the criminal case, decided in 2009, which according to him [Gregory Starks] shows there were only 10 Kg of cocaine. He argues, therefore, that since it was only in 2009 that he discovered this evidence of 10 Kg of co-caine [rather than the "more than 15 Kg" with which he was charged, and senten-ced], his §2255 motion, also filed in 2009, should not be deemed untimely.

In fact, evidence related to that on which Gregory Starks relies, indicates that in actuality, 15 Kg of substance was delivered on 6/29/2007, not just 10 Kg.

The transcript of Parks' sentencing in Case No. 07-20588-Cr-MIDDLEBROOKS (Cr:DE203, at T/9) sheds light on the quantity of drug involved in the June 29, 2007 transaction to which Starks refers in Ground 1 of his Motion Cv:DE1. Defense counsel, Omar F. Guerra Johansson, Esquire, recapping trial testimony, stated there was a June 8, 2007 meeting, involving Tim Starks and a CI, at which Parks was not present. At that meeting price was discussed, but a specific amount of cocaine was not. At a subsequent meeting Park got in the back seat of an under-cover DEA Agent's car, and Tim Starks [Movant Gregory's brother] got in the front, with the CI in the Driver's seat. Again, there was no discussion of a spe-cific amount of drugs. Counsel conceded this conduct by his client Park impli-cated him in the conspiracy. Counsel argued, however, that for a transaction and delivery on June 29 [2007] Park was not present when the delivery took place. Conversations regarding that transaction showed it was expected that there was going to be a 10 Kg distribution from the CI to Tim Starks, who in turn was going to distribute the drugs. Two Kg was to go to Tim's brother [Movant Gregrory Starks] and Tim was to keep 8 of the 10 Kg. Of Tim's 8 Kg, 7 Kg were to go to a person named Everett. Of the 10 Kg, 1 Kg was supposed to go to Park. When the CI arrived for the 6/29/2007 transaction, he told Tim Starks he had 15 Kg, not just 10, and the CI delivered 15 Kg of cocaine to Tim, who accepted them. (Cr:DE203, T/9). Counsel argued that for purposes of sentencing, the agreement had been for 10 Kg, and assignment of 15 Kg for purposes of sentencing his client Park was inappropriate, and only 10 of the 15 Kg was forseeable (Cr:DE203, T/10, 18-19).

The Court, having considered the evidence and arguments raised, in pertinent part, made the following findings: "First, Drug amount. The defendant in the meeting with Mr. Starks and the confidential informant stated that he wanted to take over the city, wanted to have all eyes on their organization, and was prepared to distribute whatever quantity of cocaine the confidential informant was capable of providing. At the meeting on June 29th the confidential informant delivered 15 kilograms of cocaine while Mr. Park was at a store nearby. He was a member of the conspiracy, and the 15 kilograms is reasonably forseeable and is attributable to him. He was a key player in this organization. I don't see any basis for the minor role given the testimony at trial. So I deny both of these objections." (Cr:DE203 at T/21).

The movant was, in pertinent part, charged with conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. §§841and 846; and possession with intent to distribute heroin in violation of 21 U.S.C. §841. Pursuant to the terms of the negotiated plea agreement, the movant waived any rights to appeal his sentence, any restitution order, or the manner in which the sentence was imposed. When a defendant waives his right to appeal pursuant to a plea agreement, the waiver will be enforced if it was knowing and voluntary. United States v. Benitez-Zapata, 131 F.3d 1444 (11 Cir. 1997); United States v. Bushert, 997 F.2d 1343, 1352 (11 Cir. 1993). A waiver is knowing and voluntary if 1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or 2) the record demonstrates that the defendant understood the full significance of the waiver. Benitez-Zapata at 1446. The validity of the waiver is not negated when the Court inadvertently advises a defendant of his right to appeal at sentencing, although the right has been waived. Id. Counsel was not ineffective, as the movant knowingly and voluntarily waived his right to appeal.

As discussed, supra, at Movant Gregory Starks' change of plea hearing, the court conducted an extensive Rule 11 hearing. At that time, the movant acknowledged under oath[5] that he was satisfied with counsel's representation, and that he had discussed the plea agreement, the government's case, and the nature of the charges with counsel prior to the change of plea.

The movant also agreed with the government's proffer of facts, which revealed that: between 2/2/2006 and 10/5/2006 he was involved in a conspiracy to accept and distribute cocaine and as far as his

---

[5]     Statements at the time of a plea colloquy are given a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63 (1977). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. Machibroda v. United States, 368 U.S. 487 (1962).

actions in that conspiracy he was involved in at least 15 Kg of cocaine; and on or about 5/9/2007 Movant possessed with intent to distribute approximately 1 ounce of heroin. It is evident from the change of plea colloquy that there were no other promises or representations made to the movant regarding the term of his sentence, and that he understood the terms of the negotiated plea agreement, and agreed to plead guilty.

The movant does not claim that he did not understand the waiver provision, or that he was coerced or forced into agreeing to it. There is nothing of record to suggest that he did not understand the significance of the waiver of appeal. The record reveals that the waiver did not result in an unlawful denial of his right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government.

Insofar as the movant attempts to assign error to counsel for not raising a claim on appeal that not all of a quantity of drugs handed over to defendants [including himself, Movant Gregory Starks] during a specific transaction should be attributed to him [Gregory Starks], Movant Starks' claim fails. The cocaine delivery was part of a larger conspiracy, evidence indicates 15 Kg of cocaine was tendered and accepted; and Gregory Starks voluntarily plead to a conspiracy involving at least 15 Kg of cocaine; and in a separate count plead to possession with intent to deliver between 20 and 40 grams of heroin. The amount of drugs involved in Movant Gregory Starks' case, however, ultimately is of no consequence because he qualifies for an enhanced sentence as a Career Offender and [and therefore the assignment of his Offense Level was not based on aggregated quantities of drugs involved in the counts for which he was adjudicated guilty, but rather based on the career offender status, and the statutory maximum sentence he faced]. As discussed, Movant had waived his right to appeal his sentence in a valid written plea agreement, and affirmed that waiver under oath before the Court; and as also previously noted, the record indi-

17

cates, through counsel's 12/18/2007 letter sent 5 days after sentencing, that counsel confirmed his discussions with Movant at sentencing that there was to be no appeal. Counsel was not ineffective, and the movant is entitled to no relief on these claims.

Moreover, if the Movant means to argue that his change of plea was not knowing and voluntary, that claim is belied by the record and warrants no further discussion. (As to a related consideration, however, it is noted that without the benefit of a guilty plea, Movant would likely have lost all of the 3-level downward adjustment, which took his Offense Level from 37 [assigned for being a Career Offender facing a possible life sentence] to 34 [based on §3E1.1 credits for Acceptance of Responsibility assisting authorities in the investigation of his own misconduct by timely notifying them of his intent to plead guilty]. With the automatic Criminal History Category VI assigned to Movant as a Career Offender, and the downward adjusted Offense Level of 34, his advisory sentencing guidelines range was 262-327 months. If all of the §3E1.1 3-Level downward adjustment were lost, then with a Criminal History Category of VI and an Offense Level of 37, the advisory sentencing guidelines range would be 360 months-Life.

Finally, the movant is not entitled to an evidentiary hearing. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979)(In §2255 proceeding, a hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record).

### Cv:DE6    GROUND ONE:

In this first of three grounds raised in his Supplement (Cv:DE6), Movant alleges counsel should have objected, and raised on appeal, a claim that for sentencing purposes he did not qualify

as a Career Offender under Chapter Four of the USSG (§4B1.1) because [according to Movant Starks] his prior drug convictions relied upon in the PSIR to assign him Career Offender Status did not qualify under §4B1.2(b) as "controlled substance offenses."

Starks, omitting part of the §4B1.2(b) definition of "controlled substance offenses," paraphrases that Subsection, stating:

> "Sentencing Guideline Manual, Section 4B1.2(b) defines the term 'controlled substance' as an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance)... *[here text is omitted]* with intent to manufacture, import, export, distribute, or dispense."[6]

Starks, further paraphrasing subsection 4B1.2(b), argues: "as noted supra, §4B1.2(b) defines controlled substance offenses as those involving manufacture, import, export, distribution or dispensing of a controlled substance."

Starks then argues that under Florida Law "those offenses involving distribution, dispensing or importation are found in violation of §893.06 of the Florida Statute;"[7] and contending that he

---

[6]      USSG Chapter Four - Part B states, at §4B1.2, captioned "<u>Definitions of Terms used in Section 4B1.1</u>," under Subsection (b) concerning "controlled substance" offenses, reads in its <u>entirety</u>, as follows, *verbatim*:

> (b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) **or the possession of a controlled substance (or a counterfeit substance)** with intent to manufacture, import, export, distribute, or dispense.

> USSG §4B1.2(b). **[Emphasis added].**

[7]      In 2007, Florida Statute §893.06 to which the Movant cites, read as follows, *verbatim*:

> 893.06 Distribution of controlled substances; order forms; labeling

was never convicted of an offense violating <u>Fla. Stat</u>. §893.06.
Movant Starks [referring to himself] states that "[i]n petitioner's
case, the Chapter Four enhancement was imposed based on prior con-
victions from the State Court of Florida, offenses in violation of
F.S. §893.13(1)(a)[8] even though, those offenses, meeting guideline

---

and packaging requirements.—

(1) Controlled substances in Schedules I and II shall be distributed
by a duly licensed manufacturer, distributor, or wholesaler to a
duly licensed manufacturer, wholesaler, distributor, practitioner,
pharmacy, as defined in chapter 465, hospital, or laboratory only
pursuant to an order form. It shall be deemed a compliance with this
subsection if the parties to the transaction have complied with
federal law respecting the use of order forms.

(2) Possession or control of controlled substances obtained as
authorized by this section shall be lawful if in the regular course
of business, occupation, profession, employment, or duty.

(3) A person in charge of a hospital or laboratory or in the employ
of this state or of any other state, or of any political subdivision
thereof, and a master or other proper officer of a ship or aircraft,
who obtains controlled substances under the provisions of this
section or otherwise, shall not administer, dispense, or otherwise
use such controlled substances within this state, except within the
scope of her or his employment or official duty, and then only for
scientific or medicinal purposes and subject to the provisions of
this chapter.

(4) It shall be unlawful to distribute a controlled substance in a
commercial container unless such container bears a label showing the
name and address of the manufacturer, the quantity, kind, and form
of controlled substance contained therein, and the identifying
symbol for such substance, as required by federal law. No person
except a pharmacist, for the purpose of dispensing a prescription,
or a practitioner, for the purpose of dispensing a controlled
substance to a patient, shall alter, deface, or remove any labels so
affixed.

[8]    In Movant Starks' PSIR, cases involving his prior adult convictions
for controlled substance offenses, for which he received guidelines points, and
which were relied upon in the PSIR to qualify him as a Chapter Four Career
Offender under §4B1.1, included convictions for "Possession with intent to sell"
involving Cannabis/Marijuana and Cocaine. [<u>See</u> PSIR at ¶¶58 and 61, and related
discussion elsewhere in this Report].

In 2007, Florida Statute §893.13(1)(a) read as follows, *verbatim*:

893.13 Prohibited acts; penalties.—

(1)(a) Except as authorized by this chapter and chapter 499, it is
unlawful for any person to sell, manufacture, or deliver, or possess
with intent to sell, manufacture, or deliver, a controlled
substance.

Under §893.03, Standards and Schedules, Cannabis [marijuana] is listed as

definition were found under F.S. §893.06."

Movant Starks, having so construed provisions of USSG §§4B1.1 and 4B1.2, and Florida Statutes §§893.06 and 893.13, reasons, therefore, that his prior Florida drug convictions, upon which he was classified in the PSIR and sentenced by the Court as a Career Offender, were not predicate qualifying offenses for purposes of USSG §4B1.1 as defined under §4B1.2(b). While Starks may be correct in arguing that his prior Florida controlled substance offenses that were counted for assignment of Career Offender status were not based on violations of <u>Fla.Stat.</u> §893.06, he is clearly not correct in arguing that his Felony offenses/convictions in Florida Case F03013421 (Count 1, for "Possession with intent to sell or deliver Marijuana," and Count 4, for "Possession with intent to Sell, Manufacture or Deliver Cocaine") as reflected in PSIR ¶58, and his Felony offense/conviction in Florida Cases F05028838A (Count 1, for "Possession with intent to Sell, Manufacture or Deliver Cannabis") as reflected in PSIR ¶61, qualify as "controlled substance offense(s)" as defined under §4B1.2(b). <u>See</u> footnote 6 <u>supra</u>, and related text.  The movant's omission of text from the definition of the term "controlled substance offense(s)" in an attempt to argue that only violations of F.S. §893.06 qualify for Career Offender status under §4B1.2(b), and his attempt to argue that his aforementioned Florida "possession with intent to" offenses from PSIR §§58 and 61 do not qualify as "controlled substance offense(s)" under §4B1.2(b), are misplaced.

To the extent that Movant may be attempting to claim that counsel failed to file an appeal based on this alleged argument, his claim fails. As discussed previously, his written appeal waiver relating to sentencing was valid, voluntary, accepted, and confirm-

---

a Schedule I controlled substance, and Cocaine including any salt, compound, derivative, or preparation of cocaine, is listed as a Schedule II controlled substance.

ed at his plea; and the record shows that counsel discussed with the Movant at sentencing that no appeal based on his sentence would be pursued, and then confirmed this in writing to the Movant on 12/18/2007 within 5 days of the sentencing [2 days before the J&C was docketed and 12 days before the 10 day appeals period expired].

Moreover, insofar as the asserted claim is without merit, there was no duty by counsel to pursue the meritless claim either at sentencing, see Strickland, Knowles, and Chandler, supra, or on appeal, see Strickland, Card, and Matire, supra.

### Cv:DE6        GROUND TWO:

In this second ground raised in his Supplemental Motion (Cv:DE6), Movant argues that counsel was ineffective for not arguing that he was "actually innocent" of the sentencing enhancement as a Career Offender. In support of this claim he argues that the probation officer's recommendation in the PSIR that he be designated as a Career Offender was based in part on a prior 1996 conviction for "Carrying a Concealed Weapon" [see PSIR ¶53]; and he argues, therefore, that his sentence as a Career Offender under §4B1.1 must be overturned, pursuant to Begay v. United States, __ U.S. ___, 128 S.Ct. 1581 (2008) and United States v. Archer, 531 F.3d 1347 (11th Cir. 2008).

This claim of ineffective assistance is patently frivolous. The record shows that counsel represented Movant in his federal criminal proceedings in 2007, through December 18, 2007. Begay was not decided until 4/16/2008, and Archer was not decided until 6/26/08. Counsel, who after Movant's sentencing no longer represented the Movant, cannot have been ineffective for failing to raise at sentencing in 2007 [or during the period for appeal that expired on 1/3/2008] claims which are predicated on legal precedent decided later, months after the Movant's judgment and conviction became final.

Moreover, in Movant Gregory Starks' case, a Begay/Archer, claim based use of his prior state conviction for carrying a concealed firearm (see PSIR §§42 and 53) as one of the offenses needed to assign him Career Offender status, is of no import. This is because, as discussed at length above, Movant Starks also had no less that two other State Felony Convictions for offenses that were a "controlled substance offense" as defined under that under §4B1.2(b). Therefore, for purposes of §4B1.1(a), Movant Starks was a Career offender even without the "carrying a concealed firearm" offense about which he now complains. The Begay/Archer claim which he seeks to purse in ground 2 of the supplemental §2255 motion (Cv:DE6) therefore requires no further discussion. [It also appears that since the instant motion (8/3/2009), as supplemented (8/29/2009) was submitted more than a year after the 6/26/2008 opinion in Archer was issued, the Begay/Archer claim would be time barred, and thereby precluded from review].

**Cv:DE6      GROUND THREE:**

In Ground 3 of his Supplemental Motion (Cv:DE6), the Movant claims that he is suffering from "manifest injustice" because of the continued imposition of a Career Offender sentence in his case.

The government argues in its response, that "there is no error in this case that is 'a fundamental defect which inherently results in complete miscarriage of justice, nor any omission inconsistent with rudimentary demands of fair procedure. Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).'" (Cv:10, p.13).

This is correct. Upon consideration of the entirety of the record, it is apparent, ignoring any time bars that may apply to the Movant's motion, as twice supplemented, there is no error of constitutional dimension in this case when his claims are reviewed. He was given a full and fair hearing at his plea and sentencing;

and he was properly classified as a Career Offender. Even without the concealed firearm offense referenced in his PSIR he continues to be properly classified and sentenced as a Career Offender pursuant to USSG §§4B1.1(a) because of his multiple prior state drug offenses referenced in the PSIR and the government's response in this case.

### CV:DE13   Movant's Last Supplement

Movant's ground in this last supplement, claiming existence of only 1 prior drug case [F0522838A referenced in ¶61 of the PSIR] qualifying as a predicate offense for Career Offender status, is incorrect. This overlooks the fact that there is at least one other qualifying "controlled substance offense" in Case F03013421 [referenced in ¶58 of the PSIR] in which case Movant was convicted of "Possession with Intent to Sell or Deliver Marijuana" [Count 1] and "Possession with Intent to Sell, Manufacture or Deliver Cocaine" [Count 4].

Movant's additional claims in this last supplement, regarding amounts of drugs attributed to him, and inappropriate aggregation of drug quantities in separate transactions, and counsel's alleged failure to raise such claims at sentencing, are without merit, since his Career Offender classification, and resulting Offense Level (37) used for sentencing purposes was predicated on prior state offenses, and not the quantities of drugs involved in the federal offenses to which he pled guilty pursuant to the valid negotiated, voluntary, plea agreement.

Based on the arguments in supplement Cv:DE13, counsel cannot be deemed to have been ineffective, and the movant is entitled to no relief under §2255.

### III   CONCLUSION

It is therefore recommended that the Movant Gregory Starks' Motion to Vacate, pursuant to 28 U.S.C. §2255 (Cv:DE1), as supplemented (Cv:DEs 6 and 13), be denied; and this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: August 9th, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Gregory Starks, Pro Se
     Reg. No. 78800-004
     Miami FCI Low
     P.O. Box 779800
     Miami, FL 33177


     Anne Ruth Schultz, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132


     Cristina Maxwell, AUSA
     U.S. Attorney's Office - HIDTA
     11200 N.W. 20th Street
     Miami, FL 33172